IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JAMES SAYLOR,<br><br>                    Plaintiff,<br><br>          v.<br><br>STATE OF NEBRASKA, RANDY KOHL, M.D.; DENNIS BAKEWELL, ROBERT HOUSTON, NEBRASKA DEPARTMENT OF CORRECTIONAL SERVICES, NATALIE BAKER, M.D., MOHAMMAD KAMAL, M.D., CAMERON WHITE, Ph.D., MARK WEILAGE, Ph.D., FRED BRITTEN, KARI PEREZ, Ph.D., and  CORRECT CARE SOLUTIONS, LLC,<br><br>                    Defendants. | **4:12CV3115**<br><br><br>**MEMORANDUM AND ORDER** |

This matter is before the court on motions to dismiss filed by Correct Care Solutions, LLC (hereinafter, "Correct Care"), Filing No. 114; Natalie Baker, M.D., Dennis Bakewell, Fred Britten, Robert Houston, Mohammad Kamal, M.D., Randy Kohl, M.D., Nebraska Department of Correctional Services, State of Nebraska, Mark Weilage, Ph.D., and Cameron White, Ph.D. (hereinafter, "the State Defendants"), Filing No. 116; and Natalie Baker, M.D., in her individual capacity, Filing No. 118.  This is an action for damages and injunctive relief for alleged deprivation of civil rights, brought pursuant to 42 U.S.C. § 1983.

The plaintiff is presently incarcerated at Tecumseh State Correctional Institution. Filing No. 113, Second Amended Complaint at 3.  He identifies the defendants as follows:  defendant Randy Kohl is the director of Health Services of the Nebraska Department of Correctional Services ("DCS"); defendant Baker was employed by DCS to provide medical services; defendant Kamal was the Behavioral Health Assistant

Administrator of Psychiatry of DCS; defendant Cameron White, Ph.D., was the Behavioral Health Administrator of DCS; defendant Mark Weilage, Ph.D., was the Behavioral Health Assistant Administrator for Mental Health Director of DCS; defendant Kari Perez, Ph.D., was Clinical Psychologist Supervisor of DCS; defendant Robert Houston was the Director of DCS; defendant Fred Britten was the Warden of the Tecumseh State Correctional Institution ("Tecumseh"); defendant Dennis Bakewell was the Warden of the Nebraska State Penitentiary ("NSP"); defendant Correct Care Solutions, LLC ("Correct Care") was a health care services agency employed by DCS and was responsible for the diagnosis, care and treatment of the plaintiff. *Id.* at 3-8. The defendants are sued in their official and individual capacities. *Id.* at 8.

In his Second Amended Complaint, the plaintiff alleges violations of his First, Eighth, and Fourteenth Amendment rights with respect to his housing, care, protection and medical treatment in prison. *Id.* at 23-30. He also asserts a state law negligence claim. *Id.* at 27. He alleges the defendants failed to provide him with necessary and adequate mental health and medical care during his incarceration and were deliberately indifferent to his serious medical needs. *Id.* at 20. Specifically, he alleges defendants failed to properly treat him for posttraumatic stress disorder ("PTSD"). *Id.* at 20-25. He also alleges violation of his due process rights and retaliation in connection with his transfer to Tecumseh. *Id.* at 27-29.

The plaintiff alleges he has suffered from PTSD since 2002 as a result of being sexually assaulted by several inmates while he was an inmate at the Lincoln Correctional Center, a DCS facility. *Id.* at 2002. He was diagnosed with PTSD in 2005 by Glenn Christiansen, M.D. *Id.* at 11. Dr. Christiansen provided psychiatric care for him from 2005 until 2010. *Id.* at 11-12.

2

Plaintiff further alleges that in 2004 he filed a tort claim against the State of Nebraska in connection with the assault and his mental health treatment. After a trial, he was awarded a judgment for damages against defendant DCS by the District Court of Lancaster County Nebraska, based in part on the failure of DCS to provide him with necessary and timely medical care on March 31. 2010. *See* Filing No. 113, Second Amended Complaint at 12; *id.*, Attachment 1, *Saylor v. State of Nebraska,* Case No. CI05-1597. The court found the defendants had been negligent in failing to provide treatment for PTSD between 2002 and 2005, but that the treatment he received thereafter, directed by Dr. Christensen, "met the applicable community standard of care." *Id.* at 12-13.

He alleges that the all of defendants were aware of the court decision, the circumstances that prompted it, and the plaintiff's medical needs in 2010. *Id.* at 14. Essentially, he alleges that shortly after the March 31, 2010, decision, "the Defendants deliberately, knowing full well the Nebraska Correctional Health Care Services Act, Case 1597, and *Estelle v. Gamble*, yet in disregard therefore, embarked upon a series of acts and omissions by which they returned to the indifferent pattern of behavior toward Plaintiff and his medical condition that had existed prior to November 2005 (the date of Christensen's diagnosis and beginning treatment) and for which they had been found culpable in Case 1597." Filing No. 113, Second Amended Complaint at 15.

He alleges that as a result of the trauma he suffered in 2002 when he was assaulted, he has repeatedly experienced headaches, flashbacks, extreme fear, anxiety, panic attacks, insomnia, nightmares, fatigue, and inability to concentrate. His extreme fear of other inmates has left him incapable of sharing a cell with any other inmates. *Id.* He alleges that, although he has repeatedly sought and requested

medical/healthcare from defendants, the defendants have repeatedly failed refused and neglected to provide him with adequate care. *Id.* at

He alleges that three weeks after the court decision, he was informed he would no longer receive psychiatric care from Dr. Christensen and in September of 2010, he was transferred to Tecumseh. *Id.* at 20-21. He alleges that the transfer was traumatic and stressful and his PTSD worsened. *Id.* at 18.

He also alleges that his transfer to Tecumseh coincided with his reclassification. *Id.* at 19. He alleges defendants DCS, Houston, Kohl, Britten, and Bakewell transferred him without following proper procedures and contends he was deprived of due process and denied a fair hearing or opportunity for meaningful review of his transfer. *Id.* at 18, 24-25. He also alleges he was transferred in retaliation for his successful tort claim. *Id.* at 28-29. He further alleges he has been housed in the Tecumseh Special Management Unit since October 2010 and has strict limitations on his movement within the institution, his access to visitors, has access to property, and his privacy. *Id.* at 19. He alleges that since Dr. Christiansen's termination in April 2010, defendants DCS, Baker, Kohl, White, Weilage, Kamal, and Correct Care have failed to provide him with necessary and adequate health and medical care. *Id.* at 16. Specifically, he alleges that Dr. Baker discontinued his medications and refused his requests for multiple therapies for his PTSD. *Id.* at 21-22. He states that defendants DCS, Kohl, Britain, Houston, and Bakewell have continually exposed plaintiff to intolerable, horrifying, and medically detrimental conditions while he has been housed at Tecumseh since 2010. *Id.* at 19. Significantly, He alleges he has been kept in administrative segregation since September of 2010 and has not been allowed meaningful review or hearing with regard to his classification or placement in segregation. *Id.*

4

He also alleges that the defendants failed to train prison personnel, failed to adopt and implement policies and procedures to protect inmates with serious medical and mental health issues, and failed to properly supervise their employees. *Id.* at 28.

The State Defendants contend that plaintiff fails to state a claim upon which relief may be granted as to all of the plaintiff's claims and asserts the court lacks subject matter jurisdiction over the plaintiff's claims for negligence and for failure to train/supervise. They also argue that defendants State of Nebraska and DCS have sovereign immunity from suit. Next, they argue that the plaintiff's complaint fails to state a claim against defendants Houston, Britten, and Bakewell, the DCS Director and the wardens of the Nebraska State Penitentiary and Tecumseh, arguing that the plaintiff makes only vague allegations against those defendants. They argue that the allegations of the complaint are not sufficient to state a claim and that the allegations with respect to retaliation do not support such an inference.

Correct Care contends that the plaintiff fails to allege any constitutional violations or any facts that the alleged constitutional violations were the result of a policy or custom of Correct Care.

Dr. Baker contends the plaintiff fails to allege facts that show her personal involvement or responsibility for the alleged Constitutional violations. She argues that the plaintiff fails to allege conduct that amounts to deliberate indifference to serious medical needs.

**LAW**

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp.*

5

*v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A plaintiff cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," stating a claim that is "plausible on its face," rather than merely "conceivable." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In order to state a viable claim under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law deprived him or her of a constitutional right or of a right conferred by a law of the United States. 42 U.S.C. § 1983. Absent a waiver or a valid Congressional abrogation of immunity, the Eleventh Amendment grants a state immunity from suits brought in federal court by its own citizens as well as citizens of another state. *See* U.S. Const. amend. XI; *Florida Prepaid Postsecondary Educ. Expense Bd. v. College Sav. Bank*, 527 U.S. 627, 635 (1999). In the absence of consent, a suit in which the state or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment—regardless of the nature of the relief sought. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100-01 (1984). State officers in their official capacities, like states themselves, are not amenable to suit for damages under § 1983. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 69 n.24 (1997); *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 & n.10 (1989); *Larson v. Kempker*, 414 F.3d 936, 939 n.3 (8th Cir. 2005).

The state has not waived its sovereign immunity to suits for negligence in federal court through the State Tort Claims Act, Neb. Rev. Stat. § 81-8,209. *See Santee Sioux Tribe of Nebraska v. State of Neb.*, 121 F.3d 427, 431 (8th Cir. 1997) (noting that the state must specify an intent to subject itself to federal court jurisdiction). The State Tort Claims Act, "provides exclusive jurisdiction for such cases under Nebraska's state district courts." Neb. Rev. Stat. § 81-8,214. The State Tort Claims Act is a conditional waiver of Nebraska's immunity to suit for damages related to certain common law claims. *First Nat'l Bank v. State*, 241 Neb. 267, 488 N.W.2d 343 (1992); *see also Kent v. State*, 118 Neb. 501, 225 N.W. 672 (1929) (holding that by consenting to be sued state merely waives its immunity); Neb. Rev. Stat. § 81-8,219 (1996 Reissue) (listing exemptions to which the Act does not apply). By its terms, the waiver exists only with respect to the district courts of the state, which have exclusive jurisdiction of all tort claims brought against the state, its agencies, or its employees. Neb. Rev. Stat. § 81-8,214 (1996 Reissue) (providing for the state's district court's exclusive jurisdiction); see also Neb. Rev. Stat. § 81-8,209 ("[T]he procedures provided by [this] act shall be used to the exclusion of all others.").

State officers are subject to § 1983 liability for damages in their personal capacities, however, even when the conduct in question relates to their official duties. *Arizonans for Official English*, 520 U.S. at 69 n.24; *Hafer v. Melo*, 502 U.S. 21, 25–31 (1991). A federal court, consistent with the Eleventh Amendment, may enjoin state officials to conform their future conduct to the requirements of federal law. *Ex Parte Young*, 209 U.S. 123 (1908). The doctrine of *Ex Parte Young* permits only prospective relief, not retrospective monetary awards. *See Arizonans for Official English*, 520 U.S. at 69 n.24; *Edelman v. Jordan*, 415 U.S. 651, 664 (1974); *Kentucky v. Graham*, 473

U.S. 159, 169 n.18 (1985) (in an injunctive or declaratory action grounded on federal law, the state's immunity can be overcome by naming state officials as defendants). Monetary relief that is "ancillary" to injunctive relief also is not barred by the Eleventh Amendment. *Edelman v. Jordan*, 415 U.S. 651 (1974).

In performing functions that would otherwise be performed by public employees, employees of private contractors are acting under color of state law and therefore can be sued under section 1983. *West v. Atkins*, 487 U.S. 42, 49–54 (1988) (holding that a private physician who contracted with a state prison to attend to the inmates' medical needs was a state actor). Anyone whose conduct is "fairly attributable to the state" can be sued as a state actor under § 1983. *Filarsky v. Delia*, 132 S. Ct. 1657, 1661 (2012) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)).

To state a claim for deliberate indifference to a serious medical need in violation of the Eighth Amendment, a plaintiff must show (1) deliberate indifference by prison officials to (2) the prisoner's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). To succeed on an Eighth Amendment claim, a plaintiff must prove that (1) objectively the deprivation of a basic human need was "sufficiently serious" and (2) subjectively the prison official acted with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The Eighth Circuit has recognized a serious medical need as "'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" *Id.* (quoting *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995)). The subjective component is satisfied by demonstrating that the prison official acted with deliberate indifference. *Wilson,* 501 U.S. at 302. To act with deliberate

indifference to serious medical needs is to recklessly disregard a known risk. *Flores v. United States,* 689 F.3d 894, 903 (8th Cir. 2012).

In order to find deliberate indifference, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). This requires "something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835. "[A] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." *Nelson v. Shuffman*, 603 F.3d 439, 449 (8th Cir. 2010).

Furthermore, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must [allege] that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior. *Id.*; *see Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 691 (1978). In order to recover against a municipal or corporate defendant under section 1983, it is not enough for the plaintiff to show that an employee of the municipality or corporation violated his constitutional rights; he must show that his injury was the result of the municipality's or corporation's official policy or custom. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 479–80 (1986) (plurality opinion)). Private corporations acting under color of state law may, like municipalities, be held liable for injuries resulting from their policies and practices. *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 690–91 (1978). "[A] supervisor may be liable for the acts of a subordinate if injury is inflicted upon the plaintiff as a result of a breach of the

9

supervisor's duty to train, supervise, or control the actions of subordinates." *Hahn v. McLey*, 737 F.2d 771, 773 (8th Cir. 1984).

## DISCUSSION

The court first finds that the State of Nebraska and the DCS are entitled to sovereign immunity. Similarly, claims against the individual defendants in their official capacity are barred by sovereign immunity. However, the Eleventh Amendment does not bar the plaintiff's claims for equitable relief against the defendants in their official capacities or his monetary damages claims against the defendants in their individual capacities.

Further, the court lacks subject matter jurisdiction over the plaintiff's state law claim for negligence. The State of Nebraska has not waived sovereign immunity for tort claims in federal court. Because this court lacks subject matter jurisdiction of the plaintiff's tort claims, the plaintiff's negligence claim must be dismissed.

The court does not agree with the state defendants' contention that that the plaintiff has failed to state a claim upon which relief may be granted as to all of the plaintiff's claims. The court disagrees with the defendants' characterization of the plaintiff's allegations as lacking any plausible allegations of deliberate indifference to his serious medical needs or as merely alleging a difference of opinion between a doctor and his patient. The plaintiff has plausibly alleged that his medical condition is serious, his diagnoses and medical needs were known to the defendants, and he alleges their conduct amounts to reckless disregard of those needs. His allegations relate specifically to conduct by each individual defendant. He alleges that his medications have been interrupted, discontinued, administered improperly or erratically, and the effective PTSD treatment as developed by his previous physician was changed or

10

dismantled.  He alleges that the defendants returned to the pattern of conduct for which they had been found culpable in the state court action.  Likewise, plaintiff alleges that he repeatedly asked the defendants for medication and treatment but was refused.

The plaintiff also properly alleges failure to train and/or supervise and failure to adopt and implement appropriate policies and procedures for treatment of mentally ill inmates.   He plausibly alleges that the administrators are responsible in their supervisory capacities because they were aware of the facts that the plaintiff was not receiving adequate care, that his condition was worsening, and yet they failed to remedy the situation.  These are allegations of individual, actionable conduct on the part of the administrative defendants that amounts to more than simple respondeat superior liability.

The court finds defendant Natalie Baker, M.D.'s motion to dismiss claims against her in her individual capacity should also be denied.   The plaintiff alleges that she denied him necessary medications and refused certain treatments.  At this stage of the proceedings, those allegations state a plausible claim for relief.

The court finds defendant Correct Care's motion should also be denied.  The plaintiff alleges Correct Care failed to properly supervise its employees as to the appropriate administration of medications actions.   Those allegations relate to actionable conduct and are not based merely on respondeat superior liability.   The plaintiff plausibly alleges that discovery will reveal whether Correct Care's actions were pursuant to its customs or policies.

IT IS ORDERED:

1.      Defendant Correct Care Solutions, LLC's motion to dismiss (Filing No. 114) is denied.

2.      The State Defendants' motion to dismiss (Filing No. 116) is granted with respect to all claims against the State of Nebraska and the Nebraska Department of Correctional Services, granted with respect to claims for damages against the defendants in their official capacities, granted with respect to the plaintiff's negligence claim, and denied in all other respects.

3.      Defendant Natalie Baker, M.D.'s motion to dismiss claims against her in her individual capacity (Filing No. 118) is denied.

4.      The defendants shall file an answer or otherwise plead within 14 days of the date of this order.

Dated this 13th day of November, 2013.

BY THE COURT:

s/ Joseph F. Bataillon
United States District Judge